IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | | |
|---|---|---|
| XAVIER R. MCKNIGHT, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CASE NO.: 1:12-cv-13 (WLS) |
| | : | |
| DOUGHERTY COUNTY, GEORGIA, | : | |
| | : | |
| Defendant. | : | |
| | : | |

**ORDER**

Before the Court is Defendant Dougherty County's Motion for Summary Judgment. (Doc. 18.) For the reasons that follow, the motion is **GRANTED in part** and **DENIED in part**.

**PROCEDURAL BACKGROUND**

This case arises from Plaintiff Xavier McKnight's employment as a procurement specialist for Dougherty County, Georgia. McKnight brought suit against the County for claims of race and sex discrimination under Title VII and for retaliation under Georgia's whistleblower statute, O.C.G.A. § 45-1-4. He claims the County terminated his employment after he disclosed to the assistant county commissioner that his supervisor had purchased two vehicles without the County Commission's approval, in violation of County code and policy.

Following discovery, the County moved for summary judgment on all claims. In response to the County's motion, McKnight abandoned his race and sex discrimination claims and seeks to proceed solely on his state-law retaliation claim. The County claims it is entitled to summary judgment on that claim because there is no evidence McKnight "disclosed" a violation or that his termination resulted from the disclosure. The County also argues McKnight's supervisor fired him because, during a probationary period, he mishandled a county contract, did not take criticism well, and argued with another employee.

1

McKnight asserts there is a genuine issue of material fact on causation because of a temporal proximity between his disclosure and termination and because his supervisor confronted him and asked whether he divulged the violation of county policy.

## STATEMENT OF FACTS

Construed in the light most favorable to McKnight, the evidence in this case shows the following. On April 25, 2011, McKnight was hired as a procurement specialist for Dougherty County, Georgia. Dougherty County is an at-will employer. McKnight's supervisor was Barbara Engram. Engram reported directly to Richard Crowdis, the County Administrator.

Throughout his employment, McKnight was in a "working test" status, a probationary period. At his hiring, he received a Personnel Manual and about two days' training from Danny Toler, the former procurement clerk. Although McKnight first felt the training was sufficient, he later felt that more training was necessary. Nevertheless, McKnight was able to approach Engram if he had questions about the procurement process.

After about two weeks, McKnight and Engram began to experience friction. McKnight believed Engram often blamed him for her own errors. He also disliked how she monitored his phone calls to determine whether they were personal or work-related. Engram, in turn, felt McKnight repeatedly made errors on procurement software. Engram also became upset with McKnight because she thought he mishandled a large County contract for jail food services. She also received complaints from the Finance Department about McKnight's errors, though many of these errors predated McKnight's employment.

Around June or July 2011, the acting supervisor for the Finance Department started a heated argument with McKnight about the referral of customers to the department to purchase surplus vehicles. "Shocked," McKnight ended the conversation without argument. Engram then called McKnight into her office and told him he "can't be arguing with people." McKnight explained that the other employee had started yelling at him and that he did not argue with her.

2

In July 2011, Assistant County Administrator Mike McCoy discovered that the procurement department had made an unauthorized purchase of a Crown Victoria car for the sheriff's department. Specifically, the department purchased the vehicle without the County Commission's approval, which is required for purchases exceeding $20,000. McCoy presented the Crown Vic to the Commission without knowledge it had already been purchased. He then discovered the purchase during a telephone call with the vendor. McCoy and Engram reported the incident to Crowdis.

Around the same time, McKnight discussed the purchase of the Crown Vic with McCoy and also alleged that the department made a similar unauthorized purchase of a Ford Explorer. McKnight apparently discovered that the Explorer was unauthorized after someone named Dwayne Green questioned the purchase and suggested that Crowdis would be upset about it.

After speaking with Crowdis, Engram "came into [McKnight's] office almost about to cry." She asked whether he had spoken with McCoy. McKnight said no. She asked whether he was sure. Engram then told him that "Richard [Crowdis] just got through chewing her out about a Crown Victoria that was ordered without the commission's approval." She added that "Richard could fire" one of them for the unauthorized purchase.

In August 2011, Engram fired McKnight. She called him into her office and told him she was going to let him go. McKnight asked why he was being fired. Engram said she didn't have to tell him because he didn't have any rights. "But," she added," I will tell you that you can't be going around starting arguments with people in different departments." In addition, Engram now also claims she fired him because he wouldn't listen to her, did not respect her knowledge, had problematic relationships with other employees, and resisted the training and instruction necessary to do a competent job.

## DISCUSSION

**I.     Summary Judgment Standards**

Under Federal Rule of Civil Procedure 56, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that

3

the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Hoffman v. Allied Corp.*, 912 F.2d 1379, 1383 (11th Cir. 1990). A fact is "material" if it is a legal element of the claim under the applicable substantive law and it might affect the outcome of the nonmoving party's case. *Allen v. Tyson Foods*, 121 F.3d 642, 646 (11th Cir. 1997) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)). A judgment is appropriate "as a matter of law" when the nonmoving party has failed to meet its burden of persuading the Court on an essential element of the claim. *See Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 804 (1999); *Celotex Corp.*, 477 U.S. at 323.

The movant bears the initial burden of showing that there is no genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. The movant can meet this burden by presenting evidence showing there is no dispute of material fact or by showing, or by pointing out to, the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322–24. Once the movant has met its burden, the nonmoving party is required "to go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial." *Id.* at 324. To avoid summary judgment, the nonmoving party must do more than summarily deny the allegations or "show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, the nonmoving party must provide "enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 251 (1986)).

On a motion for summary judgment, the Court must view all the evidence and all factual inferences drawn therefrom in the light most favorable to the nonmoving party and determine whether that evidence could reasonably sustain a jury verdict. *Celotex Corp.*, 477 U.S. at 322–23; *Allen*, 121 F.3d at 646. However, the Court must grant summary judgment if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

## II.     Analysis

The County argues it is entitled to summary judgment on McKnight's whistleblower claim because he cannot establish that he "disclosed a violation" or that he was fired because of a disclosure. The Court concludes that genuine issues of material fact exist on both issues and therefore denies summary judgment on this claim.

The Georgia Code prohibits public employers from retaliating "against a public employee for disclosing a violation of or noncompliance with law, rule, or regulation to either a supervisor or a government agency." O.C.G.A. § 45-1-4(d)(2). To establish a prima facie case under Georgia's whistleblower statute, the plaintiff must present evidence that

> (1) the employer falls under the statute's definition of "public employer"; (2) the employee disclosed "a violation of or noncompliance with a law, rule, or regulation to either a supervisor or government agency"; (3) the employee was then discharged, suspended, demoted, or suffered some other adverse employment decision by the public employer; and (4) there is some causal relation between (2) and (3).

*Forrester v. Ga. Dep't of Human Servs.*, 308 Ga. App. 716, 722 (2011) (citations omitted) (physical precedent). The County contends it is entitled to a judgment as a matter of law because McKnight has failed to unearth evidence on the second and fourth elements.

On the second element, the County argues McKnight did not "disclose" a violation "because McCoy already knew about the purchase of the vehicle" before the disclosure.  In support of this argument, the County relies entirely on *Forrester v. Georgia Department of Human Services*, where the Georgia Court of Appeals held that employees' complaint about a supervisor's chronic absenteeism and substance abuse was not a whistleblowing activity, 308 Ga. App. at 724. The court reasoned that the supervisor's alleged behavior was a "running joke" and "discussed around the office on a daily basis." *Id.* Thus, because the *Forrester* plaintiffs "disclosed something that was already widely known (and even joked about)," it was not "the type of communication encompassed by the whistle-blower statute." *Id.*

5

Unlike the communication in *Forrester*, McKnight's disclosure was not "widely known" or a matter of common knowledge around his office. There appears to be no dispute that the purchase violated County policy. While McCoy may have already known about the unauthorized purchase of the Crown Vic, nothing in the whistleblower statute suggests that protection from retaliation ought to hinge on whether the information is unknown to the recipient. Such a rule would quiet whistleblowers and thwart the legislative purpose of protecting those who disclose public offenses.

And even if O.C.G.A. § 45-1-4(d) did impose such a requirement, there is a genuine issue of material fact regarding whether the purchase of the Ford Explorer was unauthorized and whether McKnight first exposed that violation. Although Engram denies any irregularity in the Ford Explorer's purchase, McKnight testified that Dwayne Green reproved him for sending a purchase order prior to the County Commission's approval. Furthermore, e-mail evidence provides indication that the County and vendor consummated the sale before McCoy presented it to Commission. For those reasons, there exists a genuine issue of material fact on whether McKnight "disclosed" violations of County policy.

Turning to the fourth element of McKnight's claim, the County argues it is entitled to summary judgment because McKnight cannot produce evidence of causation. The Court disagrees. "The 'causal link element is construed broadly so that a plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated.'" *Freeman v. Smith*, 750 S.E.2d 739, 743 (Ga. Ct. App. 2013) (quoting *Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2011)). "In this respect, some cases even 'accept mere temporal proximity between an employer's knowledge of protected activity and adverse employment action as sufficient evidence of causality to establish a prima facie case.'" *Forrester*, 308 Ga. App. at 668–69 (quoting *Clark County School Dist. v. Breeden*, 532 U.S. 268, 273 (2001)). Moreover,

> [c]ircumstantial evidence may be sufficient to create a jury issue in the face of direct evidence to the contrary. Where direct and positive testimony is presented on an issue, the opposing party must show some other fact which contradicts the testimony. If this other fact is direct evidence, that is sufficient to allow the case to go to the jury; if the other fact is circumstan-

6

tial evidence, it must be inconsistent with the defendant's evidence, or if consistent, it must demand a finding of fact on the issue in favor of the plaintiff.

*Jones v. Bd. of Regents of Univ. Sys. of Ga.*, 262 Ga. App. 75, 81 (2003) (quoting *Furlong v. Dyal*, 246 Ga. App. 122, 123–24 (2000)).

Here, McKnight presented sufficient evidence on causation to survive summary judgment. The evidence suggests a close temporal proximity between McKnight's disclosure and his termination. McCoy testified he did not know about the unauthorized purchase of the Crown Vic during his presentation to the County Commission. Because McCoy proposed the purchase around late July and discovered the purchase sometime afterward, a jury could infer that Engram fired McKnight within several weeks of the disclosure. Courts have held that longer periods of time were sufficient to satisfy the causation element of a plaintiff's prima facie case. *Jones*, 262 Ga. App. at 81 (six weeks); *Donnellon v. Fruehauf Corp.*, 794 F.2d 598, 601 (11th Cir. 1986) (one month).

Moreover, contrary to the County's argument, there is evidence that Engram knew of McKnight's disclosure. After being "chewed out" by the County Administrator, Engram approached McKnight and asked him several times whether he was responsible for the disclosure. Although McKnight denied it, a jury could conclude that Engram continued to suspect his involvement or had received information that prompted her questions.

Finally, McKnight has presented evidence to contradict the reason Engram first proffered for his termination. According to McKnight, Engram told him he was being fired because "you can't be going around starting arguments with people in different departments." But McKnight testified that another employee started the argument, and he politely ended the conversation without engaging her. In addition, McCoy testified that his personal investigation of the incident supported McKnight's version of the story. So a jury could conclude that Engram's reason for the termination was a pretext for retaliation.

For those reasons, the Court concludes there are genuine issues of material fact on McKnight's whistleblower claim and therefore denies summary judgment on that claim.

## **CONCLUSION**

For those reasons, the County's motion is **GRANTED in part** and **DENIED in part**. Summary judgment is **GRANTED** on McKnight's race and sex discrimination claims and **DENIED** on his state-law retaliation claim.

**SO ORDERED**, this      28th      day of March, 2014.

                                                    /s/ W. Louis Sands
                                              **W. LOUIS SANDS, JUDGE**
                                              **UNITED STATES DISTRICT COURT**